United States District Court
Southern District of Texas
**ENTERED**
October 25, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TYLER C.,[1] | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:24-cv-00879 |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

### OPINION AND ORDER

Plaintiff Tyler C. seeks judicial review of an administrative decision denying his application for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). Tyler C. and Defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner"),[2] have both filed briefs. *See* Dkts. 8, 11. After reviewing the briefing, the record, and the applicable law, I recommend the Commissioner's decision be reversed and this matter remanded to the Social Security Administration for further proceedings consistent with this recommendation.

### BACKGROUND

Tyler C. filed an application for disability benefits on June 20, 2022, alleging disability beginning September 1, 2014. His application was denied and denied again upon reconsideration. On September 6, 2023, an Administrative Law Judge

---

[1] On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

("ALJ") held a hearing at which Tyler C. appeared with counsel. On October 6, 2023, the ALJ issued a decision, finding that Tyler C. had not been under a disability from his alleged onset date through the date he was last insured. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a sequential, five-step approach to determine if a claimant is disabled:

(1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See Salmond*, 892 F.3d at 817. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

At Step 1, the ALJ found that Tyler C. "did not engage in substantial gainful activity during the period from his alleged onset date of September 1, 2014, through his date last insured of December 31, 2018." Dkt. 3-3 at 21.

At Step 2, the ALJ found that Tyler C. suffers from "the following severe impairments: obesity; migraines; carpal tunnel syndrome, bilateral; diabetes mellitus, with neuropathy; degenerative disc disease, cervical, with radiculopathy; degenerative disc disease, lumbar spine; rheumatoid arthritis; sleep apnea; flat feet; hearing loss, tinnitus; major depression; anxiety; post-traumatic stress disorder and alcohol abuse; bilateral wrist tenosynovitis; cubital tunnel, bilateral; right radius fracture." *Id.*

At Step 3, the ALJ found that Tyler C. "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." *Id.* at 22.

Prior to consideration of Step 4, the ALJ determined:

> [T]hrough the date last insured, [Tyler C.] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: [he] can occasionally climb ramps or stairs; never climb ropes, ladders or scaffolding; occasionally balancing, stooping, kneeling, crouching, crawling; occasional reaching overhead and frequent reaching in other directions on the right; limited to frequent gross handling, fine fingering, with the upper extremity, bilaterally; can have exposure to moderate noise/vibration, no work at unprotected heights, dangerous moving machinery or hazards, no jobs requiring driving; limited to simple, routine, repetitive tasks, requiring no more than 1-2-3 step instructions, not performed in a production rate environment (such as assembly line work), involving making only simple, work-related decisions, and having to deal with only occasional changes in a routine work setting; limited to occasional interaction with supervisors, coworkers and the general public.

*Id.* at 25.

At Step 4, the ALJ found that "[t]hrough the date last insured, [Tyler C.] was unable to perform any past relevant work." *Id.* at 29.

At Step 5, the ALJ determined that "there were jobs that existed in significant numbers in the national economy that [Tyler C.] could have performed." *Id.* at 30. In making this determination, the ALJ relied on testimony from a vocational expert ("VE") that Tyler C.

> would have been able to perform the requirements of representative occupations such as:
>
> - Merchandise marker (DOT 209.587-034), light, SVP2, approximately 125,000 jobs in the national economy;
> - Router (DOT 222.587-038), light, SVP2, approximately 35,000 jobs in the national economy; and
> - Mail clerk (DOT 209.687-026), light, SVP2, approximately 15,000 jobs in the national economy.

*Id.* at 30. Accordingly, the ALJ found that Tyler C. "was not under a disability, as defined in the Social Security Act, at any time from September 1, 2014, the alleged onset date, through December 31, 2018, the date last insured." *Id.* at 31.

## DISCUSSION

Tyler C. raises two issues for my consideration: (1) whether the ALJ's Step 5 decision is unsupported by substantial evidence because he failed to acknowledge and resolve conflicts between the VE's testimony and the Department of Labor's Dictionary of Occupational Titles ("DOT"); and (2) whether the ALJ erred by not ordering a consultative examination. I need address only the first issue.

"When, as here, the claimant suffers from additional limitations that make the Medical–Vocational Guidelines inapplicable, the Commissioner must rely upon the services of a vocational expert or similar evidence." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000); *see also* Dkt. 3-3 at 30 (acknowledging that Tyler C.'s "ability to perform all or substantially all of the requirements of [the full range of light] work was impeded by additional limitations"). Social Security Regulation 00-4P imposes upon the ALJ "an affirmative responsibility to ask about any possible conflict between [the] VE . . . evidence and information provided in the DOT." SSR 00-4P, 2000 WL 1898704, at *4 (Dec. 4, 2000). Moreover, the Fifth Circuit "has acknowledged that the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Carey*, 230 F.3d at 145.

Here, the ALJ's decision is not supported by substantial evidence because the VE's testimony that Tyler C. could perform certain identified jobs while carrying out only simple instructions of no more than three steps is in conflict with the descriptions of those jobs in the DOT. Relying on the VE's testimony, the ALJ determined that Tyler C. can perform the jobs of Merchandise Marker (DOT 209.587-034), Router (DOT 222.587-038), and Mail Clerk (DOT 209.687-026).

Merchandise Marker and Router require a reasoning level of 2, whereas Mail Clerk requires a reasoning level of 3. Level 2 reasoning requires a worker "to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations."

U.S. DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES, at 1011 (4th ed. rev. 1991). Level 3 reasoning requires a worker "to carry out instruction furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* Yet, the ALJ found that Tyler C.'s RFC—which indicates Tyler C.'s *maximum* capabilities—limits him to carrying out only simple instructions of no more than three steps and making only simple decisions. This is a clear conflict.

Other courts in this circuit have found that "the VE's testimony is unreliable" where an ALJ fails "to identify and resolve apparent conflicts," such as the apparent conflict that arises when a "job explicitly requires a reasoning level of three [and] the ALJ limited the Plaintiff to 'simple' work-related decisions." *Fields v. Comm'r of Soc. Sec.*, No. 1:21-cv-133, 2022 WL 1599437, at *3–4 (N.D. Miss. May 20, 2022) (quotation omitted). The Commissioner implicitly concedes this point, arguing that "even if the mail clerk job is disqualified . . . , [Tyler C.] has not shown the remaining two jobs . . . conflict with [his] RFC." Dkt. 11 at 4. The Commissioner's arguments for why the ALJ's Step 5 decision is still supported by substantial evidence are (1) that the numerous authorities[3] finding a conflict between Level 2 reasoning and a restriction to "short" instructions are not binding; and (2) "if [Tyler C.] had any question about whether a restriction to simple, routine, repetitive tasks requiring no more than 1-2-3 step instructions conflicted with reasoning level two requirements, the proper forum to raise them would have been at the [administrative] hearing." Dkt. 11 at 4. Neither of these arguments are availing.

---

[3] *See Leach v. Kijakazi*, 70 F.4th 1251, 1256 (9th Cir. 2023) ("The Commissioner urges us to conclude that all jobs with reasoning level two are suitable for persons, like Claimant, who are limited to following short, simple instructions. We disagree."); *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021) (holding that level two instructions are "not . . . limited in length"); *Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019) ("'Short' is inconsistent with 'detailed' because detail and length are highly correlated. Generally, the longer the instructions, the more detail they can include.").

As to the Commissioner's argument that I should ignore the caselaw holding that there is an obvious conflict between Level 2 reasoning and a restriction to short instructions, the Commissioner cannot rationally explain how the two concepts can co-exist. A person who is able to carry out only 1-2-3 step instructions cannot "carry out detailed but uninvolved . . . instructions." DICTIONARY OF OCCUPATIONAL TITLES, at 1011; *see also Buckwalter*, 5 F.4th at 1323 ("[T]he difference between levels one and two lies in the *length* of the instructions, with level one being limited to one- or two-step instructions, and level two not being limited in length.").

At Step 5, *the Commissioner bears the burden. See Salmond*, 892 F.3d at 817. Moreover, the Commissioner's own regulations impose upon the ALJ "an affirmative responsibility to ask about any possible conflict between [the] VE . . . evidence and information provided in the DOT." SSR 00-4P, 2000 WL 1898704, at *4. This is not the type of situation that the Fifth Circuit was concerned about in *Carey v. Apfel*, when it held that

> claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

230 F.3d at 146–47.

In *Carey*, the purported conflict was apparent only with multiple inferences. *See id*. Here, however, "the vocational expert's testimony creates a conflict or discrepancy between the ALJ's determination of the claimant's residual functional capacity and the DOT job descriptions." *Id*. at 146 (describing a "less obvious," but still "obvious" type of conflict that was not at issue). In light of the Commissioner's burden and the ALJ's obligation, I do not need binding Fifth Circuit precedent recognizing a conflict between "detailed" Level 2 reasoning and simple instructions of no more than three steps to know that the ALJ was obligated to ask the VE about such conflict. *See David M. v. Kijakazi*, No. 3:22-cv-02166, 2023 WL 8007388, at

*6 (N.D. Tex. Oct. 11, 2023) (collecting cases and concluding "[i]n light of the case law . . . and the ALJ's duties pursuant to SSR 00-4p, and in the absence of any binding authority to the contrary, . . . the ALJ's RFC determination limiting Plaintiff to tasks with 'short, simple' instructions is inconsistent or in direct conflict with the VE's testimony that Plaintiff could perform [jobs with Level 2 reasoning skills]").

Turning to the Commissioner's argument that Tyler C. had to raise the conflict at the administrative hearing, Tyler C. insists that "there is no 'waiver' rule in the unique informal and non-adversarial context of Social Security disability [appeals]." Dkt. 12 at 2. While that absolute statement is true in the context of Appeals Council proceedings, the United States Supreme Court has recognized that "in the sphere of routine objections to individual benefits determinations, the scales *might* tip" toward finding an exhaustion requirement. *Carr v. Saul*, 593 U.S. 83, 92 n.5 (2021) (emphasis added). Of course, the Supreme Court has not, to this court's knowledge, ever made such a determination.

To the contrary, in her controlling concurrence, Justice O'Connor wrote:

> In the absence of a specific statute or regulation requiring issue exhaustion, however, such a rule is not always appropriate. The inquiry requires careful examination of the characteristics of the particular administrative procedure provided. . . . [I]n my view, the agency's failure to notify claimants of an issue exhaustion requirement in this context is a sufficient basis for our decision.

*Sims v. Apfel*, 530 U.S. 103, 113 (2000) (O'Connor, J., concurring) (quotation omitted). In the specific context of this case, given (1) the lack of a statutory exhaustion requirement or (2) any authority finding such a requirement in this circumstance, (3) the obviousness of the conflict at issue, (4) the ALJ's obligation to inquire as to such a conflict, and (4) the fact that the Commissioner bears the burden at Step 5, I cannot see how Tyler C. was required to raise this challenge to the ALJ during the hearing. I thus reject the Commissioner's waiver argument.

## CONCLUSION

Because the ALJ's decision is unsupported by substantial evidence, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** to the Social Security Administration for further proceedings.

SIGNED this 25th day of October 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE